#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRANDON CHANG<br>c/o 519 H Street NW<br>Washington, DC 20001<br><br>ANYA FORREST<br>c/o 519 H Street NW<br>Washington, DC 20001<br><br>      Plaintiffs, individually and on behalf<br>      of all others similarly situated,<br><br>v.<br><br>UNITED AMERICAN SECURITY, LLC<br>d/b/a GARDAWORLD<br>1699 S Hanley Road, Suite 350<br>St. Louis, MO 63144<br><br>      Defendant. | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

### CLASS AND COLLECTIVE ACTION COMPLAINT

1.  Brandon Chang and Anya Forrest, individually and on behalf of all others similarly situated, by their attorneys DCWageLaw, allege, upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

### PRELIMINARY STATEMENT

2.  This is a class action lawsuit against United American Security, LLC ("GardaWorld") for its security officers working in office buildings within the District of Columbia who were not paid the proper wages mandated by the District of Columbia Minimum Wage Act Revision Act ("DCMWA") and the District of Columbia Wage Payment and Collection Law ("DCWPCL").

GardaWorld intentionally and consistently underpaid its security officers by denying them their rightful wages for regular and overtime work. Plaintiffs Chang and Forrest, on behalf of themselves and all other similarly situated security officers, seek to recover these unpaid wages and other damages from GardaWorld.

3. Plaintiffs Chang and Forrest bring this action on behalf of themselves and all similarly situated current and former security officers who worked in the District of Columbia and were not paid the proper wages mandated by the DCMWA and DCWPCL, pursuant to Federal Rule of Civil Procedure 23.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because this is a civil action between citizens of the District of Columbia and a limited liability company that is a citizen of another state, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) (Class Action Fairness Act) because the amount in controversy exceeds $5,000,000.00, there are more than 100 class members, and at least one class member is a citizen of a different state than the Defendant.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## PARTIES

*Plaintiff Brandon Chang*

7. Plaintiff Brandon Chang is an adult resident of the District of Columbia.

8. Plaintiff Chang has worked as a security officer for GardaWorld since approximately 2017. His responsibilities include monitoring everyone who enters the building, including employees and guests, performing identification checks, conducting regular patrols, responding to emergencies, and enforcing security policies to ensure the safety of tenants and visitors.

9. Plaintiff Chang works at the Al Jazeera building located at 1200 New Hampshire Avenue NW, Washington, DC 20036. During his shifts, Plaintiff Chang and all other similarly situated security officers are responsible for conducting periodic tours every two hours. Plaintiff Chang's duties include responding to various emergencies and incidents, including alarms, propped doors, trespassers, panhandlers, and specific client requests. Plaintiff Chang is responsible for keeping the keys or fob with him at all times and escorting guests requiring access to secure areas. He must also be mindful of individuals lingering or appearing lost or suspicious. Plaintiff Chang must remain in full uniform for his entire shift and maintain a high level of awareness.

10. Plaintiff Chang typically works five days a week for GardaWorld, from Wednesday through Sunday, for a total of between 45 and 57 hours per workweek.

11. For the three years preceding the filing of this Complaint, Plaintiff Chang has been paid $18.00 per hour, which is less than the required rate for a security officer under D.C. Code § 32-1003(h). Additionally, for many workweeks, GardaWorld did not pay Chang the legally required overtime premium for his overtime hours.

12. For his work in the three years preceding the filing of this Complaint, Plaintiff Chang is owed approximately $35,000.00 in minimum and overtime wages, excluding liquidated damages.

*Plaintiff Anya Forrest*

13. Plaintiff Anya Forrest is an adult resident of the District of Columbia.

14. Plaintiff Forrest has worked as a security officer for GardaWorld since approximately 2018. Her responsibilities include monitoring everyone who enters the building, including employees and guests, performing identification checks, responding to emergencies, and enforcing security policies to ensure the safety of tenants and visitors.

15. Plaintiff Forrest works at the Al Jazeera building located at 1200 New Hampshire Avenue NW, Washington, DC 20036. Prior to working at the Al Jazeera building, Plaintiff Forrest worked at the Dupont Medical Building, located at 1234 19th Street NW, Washington, DC 20036. Plaintiff Forrest's duties include responding to various emergencies and incidents, including alarms, propped doors, trespassers, panhandlers, and specific client requests. Plaintiff Forrest is responsible for keeping the keys or fob with her at all times and escorting guests requiring access to secure areas. She must also be mindful of individuals lingering or appearing lost or suspicious. Plaintiff Forrest must remain in full uniform for her entire shift and maintain a high level of awareness.

16. Plaintiff Forrest typically works five days a week for GardaWorld, from Monday through Friday, for a total of 32 to 42 hours per workweek.

17. From August 7, 2021, through June 23, 2024, Plaintiff Forrest was paid $17.28 per hour. Starting on June 24, 2024, Plaintiff Forrest has been paid $18.00 per hour. This means that, for the three years preceding the filing of this Complaint, Plaintiff Forrest has been paid hourly rates lower than the required rate for a security officer under D.C. Code § 32-1003(h). Additionally, for many workweeks, GardaWorld did not pay Plaintiff Forrest the legally required overtime premium for her overtime hours.

18. For her work in the three years preceding the filing of this Complaint, Plaintiff Forrest is owed approximately $8,000.00 in minimum and overtime wages, excluding liquidated damages.

*Defendant*

19. Defendant United American Security, LLC ("GardaWorld") is a Delaware limited liability company that does business as GardaWorld. Its principal place of business is located at 1699 S Hanley Road, Suite 350, St. Louis, MO 63144. Its registered agent for service of process is CT Corporation System, 1015 15th Street NW, Suite 1000, Washington, DC 20005.

20. GardaWorld is a security services company that specializes in the recruitment, training, and management of security personnel across the country. In the District of Columbia, GardaWorld has contracts with property managers and buildings throughout the region. GardaWorld deploys its uniformed security officers to safeguard a diverse array of properties. These contractual agreements obligate GardaWorld to maintain the safety and security of these premises through a combination of regular patrols, surveillance monitoring, and emergency response services. The uniformed officers are visible guardians of these properties, entrusted with the well-being of those who live, work, and visit.

21. GardaWorld, through its GardaWorld Guarding division, is a major employer of security personnel in the District of Columbia, with an estimated 700 employees.

22. GardaWorld has contracts with the owners of several commercial buildings and property managers within the District of Columbia. Those contracts require GardaWorld to provide on-site security services to safeguard the property, employees, and visitors to those buildings.

23. GardaWorld is a covered employer as defined by the DCMWA and DCWPCL.

GardaWorld employed Plaintiffs and similarly situated employees within the meaning of the DCMWA and DCWPCL.

## CLASS ACTION ALLEGATIONS

24.     Plaintiffs Chang and Forrest bring this action under the DCMWA and DCWPCL on behalf of themselves and all current and former GardaWorld employees who have held positions as either lobby attendants or security officers, in office buildings in the District of Columbia, between August 15, 2021 and the date of final judgment, and who were not paid the minimum wages required by D.C. Code § 32-1003(h) (the "Class").

25.     As part of its regular business practices, GardaWorld has intentionally, willfully, and repeatedly engaged in a pattern, practice, and policy of violating the DMCWA and DCWPCL with respect to Plaintiffs and the Class by willfully failing to pay the required rates.

26.     GardaWorld's conduct has been widespread, repeated, and consistent.

27.     The Class consists of many similarly situated individuals who have been underpaid by GardaWorld in violation of the DCMWA and DCWPCL and who would benefit from the issuance of a court-supervised notice of the lawsuit and the opportunity to join the lawsuit. Those similarly situated collective members are known to GardaWorld, are readily identifiable, and can be located through GardaWorld's records.

28.     For purposes of a class action under the DCWPCL and DCMWA, "2 or more employees are similarly situated if they: (A) Are or were employed by the same employer or employers, whether concurrently or otherwise, at some point during the applicable statute of limitations period; (B) Allege one or more violations that raise similar questions as to liability; and (C) Seek

similar forms of relief" D.C. Code §§ 32-1308(a)(2), 32-1012(a) (applying remedies of the DCWPCL to the DCMWA).

29. For purposes of a class action under the DCWPCL and DCMWA, "Employees shall not be considered dissimilar…solely because their: (A) Claims seek damages that differ in amount; or (B) Job titles or other means of classifying employees differ in ways that are unrelated to their claims." D.C. Code §§ 32-1308(a)(3), 32-1012(a) (applying remedies of the DCWPCL to the DCMWA).

30. D.C. Code § 32-1003(h) mandates that, beginning on July 1, 2019, and annually thereafter, an employer must pay a security officer working in an office building in the District of Columbia wages, or any combination of wages and benefits, that are not less than the combined amount of the minimum wage and fringe benefit rate in effect on September 1 of the immediately preceding year for the guard 1 classification established by the United States Secretary of Labor pursuant to Chapter 67 of Title 41 of the United States Code (41 U.S.C. § 6701 et seq.), as amended.

31. The federal statute referenced in § 32-1003(h) is the Service Contract Act ("SCA"). For the three years preceding the filing of this Complaint, the Secretary of Labor, pursuant to the SCA, has set the following rates for the "guard 1 classification":

    a.    July 1, 2020 – June 30, 2021: $17.28 per hour.

    b.    July 1, 2021 – June 30, 2022: $17.28 per hour.

    c.    July 1, 2022 – June 30, 2023: $18.06 per hour.

    d.    July 1, 2023 – June 30, 2024: $19.39 per hour.

    e.    July 1, 2024 – June 30, 2025: $19.39 per hour.

32.     In addition to the minimum wage rate, the DCMWA requires the payment of fringe benefits or the cash equivalent of those benefits. The total value of these fringe benefits during the relevant time period was the following:

    a.     July 1, 2020 – June 30, 2021: $4.54 per hour.

    b.     July 1, 2021 – June 30, 2022: $4.54 per hour.

    c.     July 1, 2022 – June 30, 2023: $4.60 per hour.

    d.     July 1, 2023 – June 30, 2024: $4.80 per hour.

    e.     July 1, 2024 – June 30, 2025: $4.80 per hour

33.     GardaWorld did not pay members of the Class any fringe benefits and was therefore required to pay the cash equivalent of the fringe benefits in addition to the minimum wage rate for security officers. Adding the cash wage and the cash value of the fringe benefits yields the following total hourly rates:

    a.     July 1, 2020 – June 30, 2021: $21.82 per hour.

    b.     July 1, 2021 – June 30, 2022: $21.82 per hour.

    c.     July 1, 2022 – June 30, 2023: $22.66 per hour.

    d.     July 1, 2023 – June 30, 2024: $24.19 per hour.

    e.     July 1, 2024 – June 30, 2025: $24.19 per hour

34.     Under D.C. Code § 32-1002(7A), the term "security officer" is defined as provided in section 2100 of Title 17 of the District of Columbia Municipal Regulations (DCMR). According to 17 DCMR 2100.1, a "security officer" is any person privately employed to perform tasks such as preventing the theft, misappropriation, or concealment of goods, preventing damage to real or

personal property, preventing assaults or disorders at meetings, events, or performances, or preventing similar illegal occurrences.

35. GardaWorld employs individuals who are classified either as "lobby attendants" or "security officers." The distinction between these roles is nominal, with the only difference being a patch on their uniforms. Both lobby attendants and security officers perform the same essential duties, which include conducting regular patrols of the premises to ensure safety, verifying that all doors and entry points are securely locked, and maintaining a visible security presence at all times. They are required to wear uniforms to present a professional and authoritative image, which aids in deterring theft of property and money.

36. GardaWorld, from its corporate offices in the DMV area, exercises overarching control over essential aspects of the security officers' employment, including but not limited to hiring, training, licensure, and disciplinary actions.

37. GardaWorld maintained uniform policies and practices regarding the compensation of lobby attendants and security officers across all relevant locations in the District of Columbia. These policies led to the systematic underpayment of wages and denial of fringe benefits to the entire Class.

38. These individuals are also tasked with assisting in the evacuation of buildings during emergencies, ensuring the orderly and safe exit of occupants. Their responsibilities are crucial to maintaining the security and integrity of the properties they oversee, and their presence is vital in preventing unauthorized access and responding promptly to any security breaches or incidents.

39.     Lobby attendants and security officers are privately employed to perform tasks aimed at preventing theft, misappropriation, and damage to property, as well as assaults, disorders, and similar illegal occurrences.

40.     All employees, whether classified as lobby attendants or security officers, are subject to the same Employee Handbook, which details the duties and expectations for their roles, and the same relevant laws: the DCMWA and the DCWPCL.

41.     Members of the Class have worked in various office buildings—i.e., commercial properties where the primary functions are the transaction of administrative, business, civic, or professional services. For example:

    a.      Foxhall Square is located at 3301 New Mexico Avenue NW, Washington, DC 20016. This building contains various businesses, primarily medical and dental practices, including orthopedics, podiatry, optometry, dermatology, oral surgery, general dentistry practices, health, wellness, and beauty centers, general medical clinics, personal training centers, carpet cleaning services, mailing and shipping facilities, real estate agencies, and various shops and restaurants. The building is primarily used for administrative, business, and professional services, offering office space for these activities.

    b.      Jenifer Mall is located at 4400 Jenifer Street NW, Washington, DC 20015. It contains a range of administrative and professional services, including title companies, law firms, real estate agencies, dental practices, radio broadcasters, and various professional associations. The building also contains other office space primarily used for business and professional activities.

    c.      The Al Jazeera Building is located at 1200 New Hampshire Avenue NW, Washington, DC 20036. This building contains various tenants, including media companies, electronics firms, law and real estate firms, public relations agencies, non-profit organizations, and various restaurants. The building is a commercial property for business and professional services.

    d.      The Carpenters Building is located at 1003 K Street NW, Washington, DC 20001. It contains a range of administrative and professional services, including law firms, software companies, architectural companies, medical spas, and research foundations. The building contains office space that is primarily used for business and professional activities.

    e.      The Dupont Medical Building is located at 1234 19th Street NW, Washington, DC 20036. It contains various medical and dental practices, including oral surgery, dental

implant centers, endodontics, periodontics, and general dentistry practices. The Dupont Medical Building primarily functions as a commercial property for delivering professional services.

f.	The Farragut Center is located at 1725 I Street NW, Washington, DC 20006. It contains various tenants, including real estate, travel, and marketing agencies, business management consultants, health and wellness centers, a video production company, and a full-service architecture management practice. The building also contains office space primarily used for business and professional activities.

g.	The Georgetown Place North building is located at 1115 30th Street NW, Washington, DC 20007. It contains professional services, including air conditioning and wallpaper installation contractors, and a consulting company. The building is primarily used for administrative, business, and professional services, offering office space for these activities.

h.	The Georgetown Place South building is located at 1101 30th Street NW, Washington, DC 20007. It contains a range of administrative and professional services, including real estate agencies, property management companies, health and wellness centers, investment, tax and legal services, non-profit organizations, architectural firms, design shops, and financial institutions. The building is a commercial property for business and professional services.

i.	The property located at 1020 19th Street, Washington, DC 20036, is a commercial building that contains various businesses, including print shops, physical therapy and wellness centers, beauty and spa services, legal and consulting firms, non-profit organizations, and business management consultants. The building is primarily used for administrative, business, and professional services, offering office space for these activities.

j.	The property located at 1225 New York Avenue NW, Washington, DC 20005 is a building that contains a range of professional services, including law firms, non-profit organizations, business consultants, and financial associations. The building contains office space and meeting facilities for professional and business activities.

k.	The property located at 1612 K Street NW, Washington, DC 20006 is a building that contains a range of professional services, including non-profit organizations, veteran and social service organizations, and a mailing and shipping facility. The building contains office space that is primarily used for business and professional activities.

l.	The property located at 1627 K Street NW, Washington, DC 20006 contains various businesses, including law firms, real estate agencies, property management companies, mental and behavioral health centers, IT companies, and a restaurant. The building is a commercial property for business and professional services.

    m.    The property located at 1752 N Street NW, Washington, DC 20036 is a building that contains a range of professional services, including an environmental office, a migration organization, and non-profit organizations. The building contains office space that is primarily used for business and professional activities.

    n.    The property located at 818 Connecticut Avenue NW, Washington, DC 20006 is a building that contains a range of professional services, including sightseeing tour agencies, law firms, medical clinics, temp agencies, non-profit organizations, physical rehabilitation centers, business management consultants, and IT service centers. The building is primarily used for administrative, business, and professional services, offering office space for these activities.

    o.    The William T. Golden Center is located at 1201 New York Avenue NW, Washington, DC 20006. It is a commercial property primarily used for the transaction of administrative, business, civic, and professional services. The building contains a variety of tenants, including non-profit organizations, consulting firms, law firms, public relations firms, and a government agency. The building contains office space and meeting facilities for professional and business activities.

42.    GardaWorld has contracts with the property managers of various other buildings fitting this definition, where members of the Class are stationed. These buildings, like those listed above, are commercial properties used primarily for administrative, business, civic, and professional services.

43.    The property managers of each of these buildings, in their capacity as managers, as agents of GardaWorld, and potentially as joint employers, exert significant control over the work environments and conditions of the security officers stationed within their premises. This control may extend to aspects such as scheduling, work assignments, and overall supervision of the security officers' duties.

44.    GardaWorld is liable under the DCMWA and DCWPCL for failing to properly compensate Plaintiffs and the members of the proposed class.

45. GardaWorld knew or should have known that its policies and practices violated the DCMWA and DCWPCL, as the legal requirements regarding security officer compensation are clearly defined in D.C. law.

46. Plaintiffs believe that the Class includes over 400 members. The size of the Class is so large that joining all members in one lawsuit would be impracticable, cumbersome, unduly burdensome, and a waste of judicial and litigation resources. Although the exact number of individuals in the Class is not currently known, GardaWorld holds the information necessary to determine the precise count.

47. Upon information and belief, Defendant owes each Class member an average of approximately $5,000.00 in minimum wages. These individual claims may be relatively modest compared with the expense of litigating the claims.

48. Plaintiffs will fairly and adequately protect the interests of the Class.

49. Common questions of law and fact exist as to the Class and predominate over any questions affecting only individual members, and include, but are not limited to, the following:

   a. Whether the duties performed by both "lobby attendants" and "security officers" fall under the definition of "security officer" as defined in D.C. Code § 32-1002(7A) and 17 DCMR 2100.1.

   b. Whether GardaWorld failed to pay the legally required minimum wage and fringe benefits to employees classified as security officers, as mandated by D.C. Code § 32-1003(h).

   c. The calculation of the total hourly rates owed to security officers, including both the minimum wage and the cash equivalent of fringe benefits, based on the rates set by the Secretary of Labor under the Service Contract Act.

   d. Whether the specific commercial properties where class members worked qualify as "office buildings" under D.C. Code § 32-1003(h).

50. The proposed class is manageable and can be efficiently adjudicated as a class action. The common issues of law and fact predominate, and there are no individualized defenses that would require separate trials for each class member.

51. The Plaintiffs' claims are typical of those of the Class they seek to represent. They performed similar job duties, worked similar schedules, and were subject to the same employment policies as their fellow class members. Plaintiffs and the Class have all sustained similar types of damages as a result of GardaWorld's failure to comply with the DCMWA and DCWPCL.

52. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. Class certification is superior because it will avoid duplicative litigation that might result in inconsistent judgments against GardaWorld's practices.

53. The members of the Class have been damaged and are entitled to recovery because of GardaWorld's common and uniform policies and procedures.

54. The claims of the Class can be proven through common evidence, such as GardaWorld's payroll records, employee contracts, job descriptions, and internal policies. Individualized inquiries into each class member's specific duties or work location are not necessary to determine liability.

55. On information and belief, Defendant collectively owes members of the Class approximately $2 million in minimum wages, excluding liquidated damages (400 employees $\times$ $5,000.00 in minimum wages).

## COUNT I
### FAILURE TO PAY WAGES UNDER THE DCMWA
**(Brought on Behalf of Plaintiffs and the Class)**

56. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

57. GardaWorld was an "employer" of Plaintiffs and all other similarly situated security officers within the meaning of the DCMWA. D.C. Code § 32-1002(3).

58. GardaWorld violated the DCMWA by knowingly failing to pay Plaintiffs and all other similarly situated security officers the required security officer minimum wage and overtime rate.

59. GardaWorld failed to pay Plaintiffs and members of the Class the wages required by D.C. Code § 32-1003(h).

60. GardaWorld used an incorrect base rate to calculate overtime compensation, resulting in Plaintiffs and all other similarly situated security officers not receiving the proper overtime pay for hours worked in excess of forty hours in any one workweek. *See* D.C. Code § 32-1003(c) (requiring employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of forty hours in any one workweek).

61. For its violations of the DCMWA, GardaWorld is liable to Plaintiffs and all other similarly situated security officers for unpaid minimum and overtime wages, an amount equal to three times the unpaid regular and overtime wages as liquidated damages, reasonable attorney's fees and expenses, court costs, interest, and any other relief deemed appropriate by the Court.

## COUNT II
## FAILURE TO PAY WAGES UNDER THE DCWPCL
### (Brought on Behalf of Plaintiffs and the Class)

62. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

63. GardaWorld was an "employer" of Plaintiffs and all other similarly situated security officers within the meaning of the DCWPCL. D.C. Code § 32-1301(1B).

64. The DCWPCL requires employers to timely pay an employee on regular paydays. D.C. Code § 32-1302.

65. For purposes of the DCWPCL, "wages" include, among other things, minimum wages, fringe benefits, and overtime wages. D.C Code § 32-1301(3).

66. GardaWorld violated the DCWPCL by knowingly failing to timely pay Plaintiffs and all other similarly situated security officers all wages due, including minimum wages, fringe benefits, and overtime wages.

67. For its violations of the DCWPCL, GardaWorld is liable to Plaintiffs and all other similarly situated security officers for unpaid wages, an amount equal to three times the amount of unpaid wages as liquidated damages, reasonable attorney's fees and expenses, court costs, interest, and any other relief deemed appropriate by the Court. *See Sivaraman v. Guizzetti & Assocs.*, 228 A.3d 1066, 1072 (D.C. 2020) ("[T]reble damages are mandatory, not discretionary, if requested."); *Martinez v. Asian 328, LLC*, 220 F. Supp. 3d 117, 123 (D.D.C. 2016) ("[T]he liquidated-damages provision of the DCWPCL awards treble damages as liquidated damages *in addition to* the actual damages in the form of unpaid wages.").

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that the Court enter judgment in the current total amount of **$8,029,187.00**, and grant the following relief:

  a. unpaid D.C. minimum and overtime wages in the amount of $2,000,000.00, plus three times the amount of unpaid wages as liquidated damages ($6,000,000.00), pursuant to the DCMWA, D.C. Code § 32-1012;

  b. unpaid wages, plus three times the amount of unpaid wages as liquidated damages ($6,000,000.00), pursuant to the DCWPCL, D.C. Code §§ 32-1303(4) and 32-1308;

c.     certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

d.     designation of Plaintiffs as a Class Representatives and counsel of record as Class Counsel;

e.     pre- and post-judgment interest;

f.     attorney's fees and expenses computed pursuant to the matrix approved in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000), and updated to account for the current market hourly rates for attorney's services, pursuant to the DCWPCL, D.C. Code § 32-1308(b)(1) (as of this date, approximately $29,187.00);

g.     a reasonable incentive award for the lead Plaintiffs to compensate them for the time they spent attempting to recover wages for Class Members and for the risks they took in doing so; and

h.     such other relief as this Court shall deem just and proper.

August 15, 2024                                   Respectfully submitted,

**DCWAGELAW**

By: /s/ Justin Zelikovitz
JUSTIN ZELIKOVITZ, #986001
JONATHAN P. TUCKER, #1026050
519 H Street NW
Washington, DC 20001
Phone: (202) 803-6083
Fax: (202) 683-6102
justin@dcwagelaw.com
jt@dcwagelaw.com

*Counsel for Plaintiffs*

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury as to all issues so triable.

August 15, 2024                               Respectfully submitted,

**DCWAGELAW**

By: /s/ Justin Zelikovitz
JUSTIN ZELIKOVITZ, #986001
JONATHAN P. TUCKER, #1026050
519 H Street NW
Washington, DC 20001
Phone: (202) 803-6083
Fax: (202) 683-6102
justin@dcwagelaw.com
jt@dcwagelaw.com

*Counsel for Plaintiffs*